Will the clerk please call the first case. First case, 4-16-0929, Robert Fischer v. Workers' Compensation Comm'n. Counsel, you may proceed. May it please the court, Mr. Boyle, if I may first, I'd like to supplement the record. I've tried to get this in the record every place I've been, and I keep saying I'm the custodian of it. So if I may present it to the clerk and the clerk can examine it very well. Very well, yes sir. Do you have any objection to that? Thank you. I like to think that I'm not old, but I have been around a long time. And I consider myself fairly objective. And when I've had an unsuccessful result, I can look at the record and determine that probably there was evidence to support the other side winning. So this is the first time I've ever had a matter where it's solely a manifest way to the evidence argument. And it's because I believe in this instance I probably haven't done as good a job as I should have been asking the right question. Because I keep getting an answer to a question I didn't ask. Robert Fisher worked for 21 years as a lineman. Doing 24 hour a day jobs when the lines are down. Timing poles, putting wires up, doing everything that the record supports. And in that period of time, he developed a degenerative condition in his right shoulder. Now, I say, and I thought I tried this case as a repetitive trauma or as a cumulative trauma matter. But I keep getting a decision that says that on November 30th, the event that's spurred some symptoms is not the accident. And I keep being treated as a specific injury. So I'm here today to ask that you tell me one way or the other whether I've done a job of proving a repetitive trauma case. He did work for 21 years. He did on November 30th bend the wire that you see there. And it did produce some minor symptoms. I contend that that is only an accident in the sense that that's the moment he connected. His work to the condition of his shoulder in the sense that we look for the trigger date in the repetitive injury, repetitive trauma. Putting that issue on hold for a second, can you answer a threshold question? What do we make of the commission making a general adverse finding about the claimant's credibility? What do we do with that? I saw a New York Slip of Opinion that said the goose versus the gander. They cited some position. It said what's good for one side is good for the other. He's the only guy that testifies about his job. What they don't like is how he downplayed the impact of the basketball game. Yes. All right. Throw out his claim that the bending of the wire did anything. We know he played basketball and we know he had a rotator cuff tear. Now did the basketball game cause the rotator cuff tear? No, because both doctors say this is a chronic injury. It's been there for a while. It is not an acute injury which occurred as a result of the basketball game. Dr. Johnson is very clear about that. So given the fact that he's worked 21 years and he's got a rotator cuff tear and he played a basketball game in the meantime, we don't have any evidence that says the basketball game is what tore the rotator cuff. It is a symptom magnification that occurred. The reason I ask the question is because I need a theory. Whether you're seeking recovery on repetitive trauma or a specific acute injury, his credibility is in the mix, obviously. Sure. And all the issues he brought up, all of the basketball game he admitted, the symptoms before and after he admitted. So I'm stuck with the arbitrator's opinion saying that he felt he was minimizing the significance of the basketball game. But Johnson gave an opinion where he said that there was no causal connection because the mechanism of injury described by your client would not typically cause the tear. And he further opined the condition of ill-being is not related to the employment. He said that if he had torn his rotator cuff at work anywhere, he couldn't have played basketball. So why isn't there sufficient evidence to support the arbitrator in the commission's decision that you failed to prove causal connection? Because I wasn't trying to prove a specific injury. What I was trying to prove, and if you look at my questioning of the petitioner and of the petitioner's doctor, I was trying to show a long extended period use of a chronic degenerative condition that was in existence before the wire wasn't probably in existence for quite a while. What did the application adjustment of claims say to you? Specific injury? Specific injury dated of the bending of wire incident? Yes. That's because that's the day he associated the discomfort with his work. And the arbitrator began the arbitration by saying that it was that you alleged a specific injury to the shoulder bending the wire? And I don't believe we did. Now, I will admit that the petitioner believes that's what set his symptoms off, but the medical evidence demonstrates that the condition was there for a long time. And if you look to Dr. Johnson, when I examined him... So are you saying your theory is that it's an aggravation of a preexisting injury? Yes. Okay. And the opinions keep coming back saying that it is not a specific injury, and I will acknowledge that there is evidence to support, and that is not against the manifest way to the evidence, to say that it is not a specific injury on November 30th. And I never wanted to do that because even before I started this, I thought the basketball game was a problem. And I knew that that would be an issue, and I thought that there was solid evidence to demonstrate that this had been an ongoing degenerative process because of the kind of work he does. Now... Did you put in any evidence into the record as to how frequently he did these activities? You cited he pulls himself up into a truck, he throws materials away, he does some digging with shovels. How many times a day does he do these activities? Did you put in evidence any time, any evidence of the frequency or duration? Or is it simply a theory that he worked for 21 years, therefore it must be a repetitive trauma case? It's closer to the end than it is the beginning. Yeah. I note that in the application for adjustment of claim, he asked how did the accident occur, and the answer was, quote, bending two-inch wire by hand shaped to put in transformer, close quote. That doesn't sound like repetitive trauma to me. That sounds like a specific injury. The evidence showed it to be a repetitive trauma, I contend. Now, yes, that was stated the first day I... Any motion to amend the application of adjustment of claim after the evidence went in? No, and I'm not sure that's necessary. Well, how is the arbitrator supposed to divine this if even your client is testifying to a specific thing that occurred on November 30th? The arbitrator is supposed to divine that this is a repetitive trauma case? No, we give suggested decisions to the arbitrator, and my suggested decision specifically set that out. And if he would have, he did listen to the testimony, but he would have thought that there was minimal evidence about that particular event and extensive evidence about the man's work history. Well, that same sheet, can you indicate you're proceeding under repetitive trauma here? On the... Yeah. Suggestion to the arbitrator for his opinion? On the sheet you filed. You know, I can't think of it off the top of my head. Oh, the... Where he put down acute injury. The statement of the case? Well... We list the specific events that we agree and disagree about. Right. And causal connection would be the statement that we would indicate a disagreement on. And I don't believe I've ever indicated... Which theory? Which theory it is on that. All right. My theory is announced to the arbitrator after the case is tried, when we submit the suggested opinions. Okay. Okay, if there's no other questions, I appreciate the court's attention, and I consider this an important matter for Mr. Fisher. You'll have time on reply. Good morning. My name is Vincent Boyle, and I'm here on behalf of the respondent, Corn Belt Energy. The issue before this court today is whether the commission's findings are against the manifest weight of the evidence. It's not whether or not the commission addressed a theory of repetitive trauma, or whether or not the basketball game constituted an intervening accident, which are both arguments made in Fisher's appeal. We're here today because the petitioner does not agree with the commission's finding of fact, and he is attempting to re-argue those same facts. What about his position that this case represents an aggravation of a pre-existing injury? I mean, that's a viable theory in the abstract, isn't it? I agree with you that it's a viable theory, but at the same time, there's no credible evidence that was submitted during arbitration to support that theory. With regard to the theory of accident of the arbitrator, and subsequently the commission considered Fisher's argument that his alleged accident was the result of repetitive trauma, and properly dismissed it. He's asserted this theory to both tribunals, but based on the facts, the commission appropriately treated the claim as a specific injury when addressing accident and causation. Fisher's application for adjustment of claim, his first report of injury, the medical records, and his own testimony during all of these proceedings indicate a specific traumatic work injury. As he pointed out his testimony at arbitration, I asked him specifically if he was attributing his injury to the specific work activity of bending wire, and he said he was. He allegedly experienced pain for the first time on that day, while doing that very specific activity, and he testified that he was asymptomatic prior to this alleged incident, and was able to perform his full duty job functions without issue for 21 years prior to this event. This is entirely inconsistent with the repetitive trauma theory. Let me ask you this. If we were to give due consideration to his argument, even if he was correct in the argument that somehow the arbitrator and the commission misinterpreted his theory, was there sufficient evidence to establish a repetitive trauma case irrespective of the other issue? I would respectfully argue that no, there wasn't sufficient evidence to prove accident under either theory. Why is that? There was no report of injury on the date of accident. There was no contemporaneous medical records on the date of accident. He did not report this injury and did not seek medical treatment until the following Monday. This accident occurred on a Friday. That Saturday he played in a basketball game. So if an accident had occurred on Friday, it was not to the point to prevent him from seeking immediate treatment, and it was not to the point to prevent him from playing in a basketball game the very next day. What I was trying to ask you, is there any real evidence in the record to establish the repetitive nature of his duties in this job? Would it be sufficient even under that theory? The medical records don't support repetitive trauma. There's nothing indicating that this was a repetitive trauma injury pursuant to Bellwood, where his condition gradually deteriorated. There's nothing to support repetitive trauma in that regard. So there's no medical records, prior medical records of a rotator cuff problem? No, not to the right side. He did have a prior left rotator cuff injury, but it was completely unrelated to work. So once we dispense with this theory of injury argument, we're left with whether or not Fisher met the required burden of proof that an accident occurred under the act, and whether his shoulder condition is causally related to the alleged accident of November 30, 2012. These are both questions of fact for the Commission, and this Court well knows it is the function of the Commission to decide questions of facts and causation, to judge the credibility of the witnesses, and to resolve conflicting medical evidence. It is not the role of this Court to re-weigh evidence and substitute its judgment for that of the Commission, but that is what Fisher is asking you to do today. As a trier of fact, the Commission found Fisher was not a credible witness. His testimony is the only evidence to support an accident in this case. He testified that on the date of the alleged accident, he could no longer perform his job duties, so he had to ask a co-worker to finish out his job duties that day. He did not present that co-worker to testify at trial. And again, there was no report of injury on that date. He did not seek medical treatment on that date until after the basketball game, which is what the Commission ultimately decided was likely the cause of his condition. There is no objective evidence to support Fisher's allegations he sustained a work-related injury on November 30, 2012. The Commission correctly concluded Fisher failed to meet his burden of proof on an accident, and this factual determination was not against the manifest weight of the evidence. Because he failed to prove that he sustained a work-related accident, this Court need not address causation. He cannot establish causation without proving he sustained a work-related accident. Regardless, if we do consider the issue of causation, the Commission adopted the opinions of Dr. Johnson over the opinions of Dr. Dustman, and it was within its province to do so. Dr. Dustman's opinion was the only evidence submitted by Fisher to support his allegations that his condition was causally related to the alleged work injury. So the Commission, as a triad of fact, utilizing the evidence that was submitted at arbitration, correctly concluded that he failed to meet the burden of proof with regard to accident and causation, and therefore the Commission's decision to deny benefits under the Act should be upheld. If there are no further questions, that's all I have. Thank you. I acknowledge there's no four times a day I did this or five times a day I did that. I did ask Dr. Dustman. I gave him a long litany on C-141 and 142 of shovels, pulling, climbing poles, and all that stuff. And then I said, Doctor, taking those items into account, do you have an opinion as to whether or not that could have aggravated the right shoulder rotator cuff? And he says, I think without question, those types of activities could have a causal connection and certainly an aggravation. So there's no numerical compounding of events in the record. There is an opinion of the surgeon that the types of activities could or likely would aggravate the preexisting condition. I didn't ask the precise question of Dr. Johnson the same way. I just asked him if those various activities would put a stress on the rotator cuff. And he said yes to all of them. And the last question I asked him was whether or not, having seen the piece of wire, whether that would put a stress on the rotator cuff bending it. And he said yes. So I really don't think there's a great deal of disagreement between the medical testimony. And you point out to me one thing I didn't consider. And that is I don't have seven times a week I got in the truck and five times a day I climbed a pole. But I have a summary of those events in the doctor's opinion. Thank you.